UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DDLI LOGISTICS LLC,

        Plaintiff,

v.

METALSA SA de CV,
METALSA STRUCTURAL
PRODUCTS, INC.

        Defendants.
_____/

Civil Case No. 20-11872
Honorable Linda V. Parker

# OPINION AND ORDER GRANTING IN PART AND DENYING IN PART METALSA STRUCTURAL PRODUCTS, INC'S MOTION TO DISMISS (ECF NO. 14)

On July 9, 2020, Plaintiff DDLI Logistics LLC, doing business as American Rail Center Logistics (hereafter "American Rail"), brought this action against Defendants Metalsa S.A. de CV ("Metalsa Mexico") and Metalsa Structural Products, Inc. ("Metalsa U.S."), collectively ("Defendants" or "Metalsa"). (ECF No. 1.) On or around January 2019, American Rail and Metalsa Mexico entered into a Mutual Confidentiality and Non-Use Agreement ("Agreement"), effective January 30, 2019. American Rail claims that Defendants are liable for the breach of this Agreement.

On August 20, 2020, American Rail filed an Amended Complaint. (ECF No. 12.) American Rail alleges: (i) a breach of contract claim against Metalsa

1

Mexico (Count I) [1]; (ii) an unjust enrichment claim against Metalsa U.S. (Count II); (iii) a tortious interference with contract claim against Metalsa U.S. (Count III); (iv) and, a civil conspiracy claims against all Defendants (Count IV). (*Id.*)

The matter is presently before the Court on Metalsa U.S.' motion to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) The motion is fully briefed by American Rail and Metalsa U.S. (ECF Nos. 15, 16.) American Rail has failed to serve Metalsa Mexico with the summons and a copy of the Amended Complaint. On July 8, 2021, American Rail filed a "Motion for Alternative Service or, Alternatively, an Extension of Time to Perfect Service of Defendant [Metalsa Mexico]." (ECF No. 25.) The Court issued its ruling on this motion. (ECF No. 26.)

Finding the facts and legal arguments sufficiently presented in the parties' briefs regarding the motion to dismiss (ECF No. 14), the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

---

[1] Notably, Metalsa U.S. disputes whether a breach occurred. Specifically, Metalsa U.S. disputes whether disclosure by American Rail of "the location of a warehouse owned by a third party qualifies as confidential information under the [Agreement]." (ECF No. 14 at Pg ID 106, n.3.) First, American Rail has not served Metalsa Mexico at this time, so this issue is not ripe for the Court's review. Second, Metalsa U.S. concedes that whether a breach of contract occurred is "not at issue in [its] Motion . . . ." (*Id.*) Third, Metalsa U.S. fails to develop its argument as to why the disclosure of the location of the warehouse would not constitute confidential information under clause 1.4 of the Agreement. (*See* Ex. 1, ECF No. 12-1 at Pg ID 89.)

I.      **Standard for Motion to Dismiss**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

**II.  Factual Background**

American Rail provides "supply-chain support and resources, in the form of logistical, shipping, and storage services to a variety of companies." (Am. Compl. ¶ 16, ECF No. 12 at Pg ID 74.) The support and resources include activities of transloading, warehousing, trucking, rail transportation, foreign trade zone containment, and intermodal freight transport. (*Id*.) "Metalsa is a large international company involved in the automotive industry, providing automotive manufacturers with parts for trucks and passenger cars." (*Id*. ¶ 20, Pg ID 75.)

In January 2019, Metalsa sought a proposal from American Rail to develop a supply-chain logistics plan to transport auto parts from Mexico to Ohio. (*Id*. ¶¶ 2, 23, Pg ID 71, 76.) To protect the plan that American Rail was to develop, American Rail and Metalsa Mexico entered into the Agreement, agreeing "to neither disclose any confidential or proprietary information to third-parties nor utilize the confidential or proprietary information without written consent." (*Id*. ¶¶

4

3, 19, 25-31, Ex. 1, Pg ID 71-72, 75-78.)  The Agreement is attached to the Amended Complaint.  (ECF No. 12-1.)

"Metalsa U.S. is an [a]ffiliate of Metalsa Mexico as defined in the Agreement."  (Am. Compl. ¶ 11, ECF No. 12 at Pg ID 73.)  Metalsa U.S. also was a beneficiary of the Agreement because it contemplates that affiliates of Metalsa Mexico, such as Metalsa U.S., would receive benefits from the Agreement.  (*Id.* ¶¶ 23, 24, Pg ID 76.)  In the definitions section under clause 1.3 of the Agreement, an "Affiliate Receiver" is defined as follows:

> an Affiliate of either of the Parties hereto which receives Confidential Information from the other Party or from an Affiliate Discloser.  Any Affiliate Receiver may receive confidential information from a Party or from an Affiliate Discloser hereunder and such receipt shall be deemed to be a receipt of Confidential Information by a Receiving Party (as defined below).

(Ex. 1, ECF No. 12-1 at Pg ID 88.)  Any Affiliate of Metalsa Mexico is bound by the Agreement's non-disclosure and nonuse obligations.  (Am. Compl. ¶ 3, ECF No. 12 at Pg ID 72.)  Specifically, the Agreement reads as follows:

> 2.1 The Receiving Party is hereby obligated to - and agrees to inform and obligate its Affiliates to hold the Disclosing Party's Confidential Information in the strictest confidence and agrees to not disclose the Confidential Information to any other persons or entities, either orally or in writing, unless it has previously obtained a written consent of the Disclosing Party, save that disclosure may be made to the extent required by law, a court or a governmental entity, provided that the Receiving

5

> Party (where permitted by law) has promptly notified the Disclosing Party prior to such disclosure to allow the Disclosing Party to legally challenge such disclosure at its own expense.  The Receiving Party also agrees to make each of its directors, officers, employees and Affiliates who get to have access to the Confidential Information aware of this Agreement, and it agrees to take appropriate action with respect to such directors, officers, employees and Affiliates to ensure that the obligations of non-use and non-disclosure of the Confidential Information under this Agreement are fully satisfied.  At a minimum, the Receiving Party shall use, and shall require of others, the same degree of care with regard to the Disclosing Party's Confidential Information as it uses with regard to its own Confidential Information.  *Each Party hereto shall be responsible and liable* for such Party's respective Affiliate Receiver if the Confidential Information provided to any Affiliate Receiver is disclosed to third parties in breach of this Agreement.
>
> 2.2 The Receiving Party agrees (a) not to remove any tangible Confidential Information in its possession from the Receiving Party's or from its Affiliates' premises; (b) to use the Confidential Information solely for the Disclosure Purpose or as otherwise expressly authorized by the Disclosing Party and (c) not to make any other use of the Confidential Information for its own benefit at any time in the future, and not to knowingly permit or facilitate such use by any other person or entities except as set forth in this Agreement, without the prior written consent of the Disclosing Party.

(Ex. 1, ECF No. 12-1 at Pg ID 89) (emphasis added.))  After entering the Agreement, American Rail developed a supply-chain logistic plan to ship Metalsa's automotive frames from Mexico to Toledo and disclosed this confidential information to the Defendants.  (Am. Compl. ¶¶ 5, 33-36, ECF No. 12 at Pg ID 72, 79.)  Representatives of both Metalsa Mexico and

Metalsa U.S. received this confidential information from American Rail and "never objected to American Rail's confidential designation, nor did they indicate any prior knowledge of this information." (*Id*. ¶¶ 6, 35–37, Pg ID 72, 79.)

Following American Rail's disclosure of its confidential information in the proposed business plan, Defendants did not retain American Rail. However, Defendants utilized the confidential information without American Rail's written consent. (*Id*. ¶¶ 7, 38, 39, Pg ID 72, 80.) This is apparent by Metalsa U.S.' current occupancy in the exact storage facility proposed by American Rail. (*Id*. ¶ 58, Pg ID 83.) American Rail also alleges that Metalsa U.S. further utilized the confidential information by transitioning a portion of its distribution and customer service center from Michigan to Ohio. (*Id*. ¶ 59, Pg ID 83.)

As noted above, American Rail claims that Metalsa Mexico, which has yet to be served, breached the contract by disclosing or utilizing confidential information without written consent. (*Id*. ¶ 45, Pg ID 81.) Further, American Rail asserts that Metalsa U.S.: (i) received a benefit from American Rail's supply-chain logistic plans, although it did not retain American Rail; (ii) and induced Metalsa Mexico to breach the Agreement. (*Id*. ¶¶ 50, 59, Pg ID 82-83.) American Rail also asserts a civil conspiracy claim against Defendants alleging that they "conspired together through an intentional agreement and/or preconceived plan to

7

obtain and improperly unlawfully utilize American Rail's confidential information." (*Id.* ¶ 68, Pg ID 85.)

## II. Applicable Law and Analysis

In its motion, Metalsa U.S. contends that "there is no valid common law cause of action against Metalsa U.S. for the alleged misuse of American Rail's confidential information, where Metalsa U.S. was not a party to the [Agreement]." (ECF No. 14 at Pg ID 96.) Metalsa U.S. requests this Court to dismiss all claims against them. (*Id.* at Pg ID 97.) Michigan law governs this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

### A. Unjust Enrichment

Under Michigan law, "to sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. Ct. App. 2006) (citing *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993)). "In other words, the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Id*.

However, an unjust enrichment claim is precluded by the existence of an express contract, but only where the contract is "*between the same parties on the*

*same subject matter*." *Chrysler Realty Co. v. Design Forum Architects, Inc.*, 544 F. Supp. 2d 609, 617 (E.D. Mich. 2008) (emphasis in original) (quoting *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 903-04 (Mich. Ct. App. 2006)); *see also KSR Int'l Co. v. Delphi Auto. Sys., LLC*, 523 F. App'x 357, 363 (6th Cir. 2013) ("[A] contract will not be implied if there is an express contract between the same parties on the same subject matter.")

Metalsa U.S. contends that American Rail cannot maintain an unjust enrichment claim because an express contract exists covering the same subject matter, i.e., the Agreement between Metalsa Mexico and American Rail. (ECF No. 14 at Pg ID 108-109.) American Rail argues in response that its unjust enrichment claim is not barred because Metalsa U.S. is not a party to the Agreement.[2] (ECF No. 15 at Pg ID 134-36.) In *Morris Pumps*, the Michigan Court of Appeals found that the plaintiff, which supplied materials to a distressed subcontractor, could sue a general contractor for unjust enrichment. *Morris Pumps*, 729 N.W.2d at 903-904. The court reasoned that the plaintiff and general contractor contracted separately with the subcontractor and not each other, so "the contracts did not exist *between the same parties*." *Id*. at 904 (emphasis in original).

[2] Metalsa U.S. acknowledges that it is not a party to the Agreement. (*See* ECF No. 14 at Pg ID 106.)

However, Metalsa U.S. argues that the present case is more like *Landstar Express America, Inc. v. Nexteer Automotive Corporation*, 900 N.W.2d 650 (Mich. Ct. App. 2017), where the state court granted summary disposition on the plaintiff's unjust enrichment claim. In *Landstar Express*, the plaintiff and defendants both had independent express contracts with nonparty "Contech." *Id*. at 653. In the contract between the plaintiff and Contech, Contech agreed to pay the plaintiff, a transportation and logistics company, for the delivery of automobile parts to the defendant, a manufacturer of automobile steering assemblies. *Id*. In the contract between Contech and the defendants, Contech agreed to meet delivery deadlines on shipment of parts to the defendants and if it failed, to pay for premium shipments. *Id*. When Contech failed to pay the plaintiff for its deliveries, the plaintiff sued the defendants under *inter alia* an unjust enrichment theory.

The Michigan Court of Appeals affirmed the trial court's dismissal of the unjust enrichment claim, distinguishing it from *Morris Pumps* because there was no "unjust" receipt of a benefit by the defendants. *Id.* at 657-68. As the court explained, "the mere fact that a third person benefits from a contract between two persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution." *Id.* at 657 (quoting *Morris Pumps*, 729 N.W.2d at 904). The *Landstar Express* court provided the following reason for its conclusion that the defendants were not "unjustly" enriched:

> [T]he evidence clearly shows that Contech contracted with plaintiff for the shipments at issue. In those contracts, Contech was responsible for the payment of those requested services. Likewise, the contract between defendants and Contech shows that Contech was responsible for expedited-freight charges. Accordingly, the benefit defendants received—the *206 timely delivery of steering assembly parts—was nothing more than what all the parties contemplated. Further, all the parties contemplated that Contech—not defendants—would be responsible for the shipping charges.

*Id.* at 658.

The *Landstar Express* court also explained that while "*Morris Pumps* [c]ourt qualified that 'generally' the same parties need to have an express contract on the same subject matter—it is not an absolute requirement." *Id*. at 656. As such, the absence of an express contract between the parties, is not controlling. The *Landstar Express* court pointed out that only Contech and plaintiff had agreed that Contech was responsible for shipping costs, not the defendant. *Id*. at 657. The court therefore held that, "while there was no direct contract between plaintiff and defendants, the fact that defendant contracted with Contech and Contech, in turn, contracted with plaintiff—with all contracts specifically and consistently providing that Contech is the party responsible for shipping costs—is sufficient to preclude the imposition of any implied contract to the contrary." *Id*. at 657; *see also P.A.L. Env't Safety Corp. v. N. Am. Dismantling Corp.*, No. 19-11630, 2021 WL 634633, at \*3 (E.D. Mich. Feb. 18, 2021) (finding that *Landstar Express* did not explicitly

11

limit *Morris Pumps*, but rather "highlights the key animating factor in deciding whether to imply a contract: whether there is a contract covering the same subject matter, the existence of which is 'sufficient to preclude the imposition of any implied contract' contrary to the express contracts.") The preclusion occurred because the contract expressly stated that nonparty Contech, and not Nexteer, was responsible for shipping costs.

Here, similarly, the Agreement provides that Metalsa Mexico, and not Metalsa U.S., would be responsible for alleged misuse of the confidential information. *Landstar Express* is, therefore, directly on point. Accordingly, American Rail has failed to allege a claim of unjust enrichment when the Agreement itself covers the issue. Finding that American Rail has not alleged sufficient facts that could entitle it to a claim of unjust enrichment, the court is granting the motion to dismiss with respect to the claim for unjust enrichment.

### B. Tortious Interference with a Contract

In Michigan, "[t]he elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 848-49 (Mich. Ct. App. 2005). To establish this claim, the plaintiff must allege "the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the

12

purpose of invading the contractual rights or business relationship of another." *Badiee v. Brighton Area Sch.*, 695 N.W.2d 521, 539 (Mich. App. 2005) (citing *CMI Int'l., Inc. v. Intermet Int'l. Corp.,* 649 N.W.2d 808 (Mich. App. 2002). "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v. R.L. Polk Co.*, 483 N.W.2d 629, 635 (1992 Mich. App.) (citing *Formall, Inc. v. Cmty. Nat. Bank of Pontiac*, 421 N.W.2d 289 (Mich. Ct. App. 1988).

American Rail supports its tortious interference claim by alleging that Metalsa U.S. was aware of the Agreement and instigated Metalsa Mexico's breach of the Agreement by utilizing confidential supply-chain logistic plans. (Am. Compl. ¶¶ 56, 58, 59, ECF No. 12 at Pg ID 83.) American Rail further alleges that the use of American Rail's confidential information by Metalsa US is evidenced "by its current occupancy in the exact storage facility that American Rail proposed for use within its confidential supply-chain logistic plans." (*Id.* ¶ 58, Pg ID 83.) Lastly, American Rail asserts that Metalsa U.S. tortiously instigated Metalsa Mexico's breach of the Agreement by using American Rail's confidential information to transition a portion of its distribution and customer service center to Ohio. (ECF No. 15 at Pg ID 139.)

The parties do not dispute the Agreement's existence. Second, the Court need not address the element of whether a breach occurred for the reasons noted

above. The remaining element is whether there is an unjustified instigation of the breach by Metalsa U.S. Metalsa U.S. argues that there can be no per se wrongful act by Metalsa U.S. when American Rail directly presented the confidential information to both parties in meetings. (ECF No. 14 at Pg ID 112-13 (*see also* Am. Compl. ¶¶ 6, 35–37, ECF No. 12 at Pg ID 72, 79)). American Rail counters that the per se wrongful act is not Metalsa U.S.' *receipt* of the information but their *use* of the confidential information. (ECF No. 15 at Pg ID 141.) At this stage in litigation and based on the allegations in the Complaint, the Court agrees with American Rail that Metalsa U.S.' alleged use of the confidential information, not the receipt of this information, could support the element of an unjustified instigation of breach by Defendant.

### C. Civil Conspiracy

Under Michigan law, "[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351 (1992) (citations omitted). "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (internal quotations omitted).

14

In their Amended Complaint, American Rail alleges that Defendants "conspired together through an intentional agreement and/or preconceived plan to obtain and improperly unlawfully utilize American Rail's confidential information." (Am. Compl. ¶ 68, ECF No. 12 at Pg ID 85.)  American Rail has sufficiently set forth a civil conspiracy claim.  Metalsa U.S. argues that American Rail's civil conspiracy claim fails as a matter of law because there is no underlying tort alleged.  (ECF No. 14 at Pg ID 113.)  Given that American Rail has pled sufficient facts on its tortious interference claim to survive dismissal, the Court concludes that its civil conspiracy claim survives on this basis.

For the reasons stated, the Court concludes that American Rail states viable tortious interference and civil conspiracy claims against Metalsa U.S.

Accordingly,

**IT IS ORDERED** that Metalsa U.S.' Motion to Dismiss the First Amended Complaint (ECF No. 14) is **GRANTED IN PART AND DENIED IN PART** in that Count II is **DISMISSED**.

**IT IS SO ORDERED.**

<div style="text-align:right">
s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE
</div>

Dated: January 5, 2022